# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| THE RADIOLOGY GROUP, LLC | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | FILE NO. _____ |
| | ) | |
| M KEY FINANCIAL SERVICES, LLC, and | ) | |
| MELRENEE KEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The Radiology Group, LLC ("TRG" or "Plaintiff") files this Complaint against M Key Financial Services, LLC ("M Key Financial Services") and Melrenee Key ("Ms. Key") (collectively "Defendants"), alleging as follows:

## INTRODUCTION

1.

This lawsuit stems from the unlawful theft and misappropriation of confidential financial information and trade secrets from Plaintiff by Defendants Ms. Key and the limited liability company M Key Financial Services in which, on information and belief, Ms. Key is the sole member. Ms. Key abused the access to which Plaintiff had granted her in TRG's sensitive financial information and trade secrets, unlawfully taking and converting that information to her own personal use, and disclosing it without authorization to a third party, to the detriment of TRG. Based on evidence obtained so far, she did so during her employment in March 2021 and then again, more than two years after she was no longer employed or engaged in any way with TRG, in April 2023. Plaintiff's claims arising from the unlawful actions of Defendants include computer

1

theft and computer invasion of privacy under the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-93 ("GCSPA"), breach of contract, breach of fiduciary duty, and misappropriation of trade secrets under the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760, *et seq*. ("GTSA") as well as the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"). Plaintiff seeks all available remedies stemming from Defendants' unlawful conduct, including actual damages, exemplary damages, punitive damages, injunctive relief, attorneys' fees and expenses of litigation.

## PARTIES, JURISDICTION, AND VENUE

2.

Plaintiff TRG is a Georgia domestic limited liability company with its principal office in Fulton County, Georgia. Plaintiff submits itself to the jurisdiction of this Court.

3.

Defendant Melrenee Key is an individual residing at 925 Buckingham Cove, Fairburn, Fulton County, Georgia, 30213, where she may be served with a summons and this Complaint. She is subject to this Court's jurisdiction by reason of her domicile in Fulton County, Georgia.

4.

Defendant M Key Financial Services, LLC is a Georgia limited liability company that, at all times relevant to this action, conducted business in Fulton County, Georgia. Defendant may be served with a summons and this Complaint at its principal place of business, 925 Buckingham Cove, Fairburn, Georgia, 30213.

5.

This Court has subject-matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction over Plaintiff's claim under the DTSA because it presents a federal question and over Plaintiff's claims under Georgia state law because they derive from a common nucleus of operative fact with the federal claim and are therefore within the Court's supplemental jurisdiction.

6.

Venue is proper in this Court as the judicial district in which the defendants reside and act and omissions underlying Plaintiff's claims took place.

## FACTUAL BACKGROUND

### The Parties and Their Prior Employment Relationship

7.

Plaintiff TRG is a privately-held, Atlanta-based teleradiology provider that delivers diagnostic imaging services to medical facilities.

8.

Ms. Key was hired by TRG as a Finance Manager in or about 2012. She later received a promotion to Director of Finance, a position which she held until her voluntary resignation in March 2021.

9.

TRG entrusted Ms. Key throughout her employment with significant financial responsibilities, including managing weekly payroll, handling client billing, performing bank reconciliations, managing accounts payable and receivable, and maintaining the company's financial records including in Quickbooks, among other things.

10.

Ms. Key used QuickBooks in the course of her duties, which gave her password-protected access to TRG's confidential financial documents, including revenue reports, banking records (e.g., cash withdrawal and deposit reports or statements), profit and loss statements, income statements and other sensitive financial information and records.

**TRG's Efforts to Protect its Confidential Information & Trade Secrets and Ms. Key's Obligations to Comply With TRG's Confidentiality Requirements**

11.

TRG takes, and at all times relevant hereto, has taken reasonable measures to protect the confidentiality of its financial information. Such measures include, but are not limited to, using confidentiality agreements, requiring employees to acknowledge and abide by strict policies restricting use and disclosure of company confidential information, implementing IT security such as password protection and termination of access rights upon notice of termination/resignation, establishing needs-based restrictions that limit access to confidential information to particular levels or groups of employees, and reiterating to departing employees their obligations to return all of TRG's confidential and proprietary material and information.

12.

As a condition of her employment, Ms. Key was required to comply with certain company policies, including policies describing TRG's confidential information and trade secrets and prohibiting their use and disclosure except as required in the performance of job duties.

13.

Throughout all or most of Ms. Key's employment, TRG had policies in place prohibiting the unauthorized use and disclosure of the company's confidential information and trade secrets.

14.

In January 2021, the company promulgated a new Employee Handbook that contained robust policies protecting TRG's confidential information and trade secrets. Pertinent excerpts are attached as Exhibit A.

15.

Ms. Key received a copy of the new Employee Handbook in early 2021. She was required to review and understand it and to return a signed acknowledgement reflecting her agreement to abide by its terms, including the provisions protecting TRG's confidential information and trade secrets.

16.

Ms. Key knew or should have known that the sensitive financial information to which she had access was confidential and not to be shared outside the organization.

**Ms. Key's Resignation from TRG & Subsequent Consulting Agreement**

17.

Ms. Key submitted a resignation letter on March 3, 2021, stating that her last day of employment would be March 19, 2021.

18.

After submitting her resignation letter, Ms. Key agreed to continue working as an employee through the end of March 2021. Thus, her last day as an employee was March 31, 2021.

19.

Immediately after her employment ended, Ms. Key continued providing services to TRG through her consulting company, M Key Financial Services, LLC. As a result, she continued to have access to Plaintiff's confidential financial information in that capacity.

20.

On or about April 8, 2021, on behalf of M Key Financial Services, Ms. Key agreed to and executed a Consulting Service Agreement ("Agreement") with Plaintiff, pursuant to which Ms. Key was to provide consulting services from April 12, 2021, to July 23, 2021. A copy of the Agreement is attached hereto as Exhibit B.

21.

The Agreement contains a confidentiality provision identifying as confidential:

"[D]ata and information: 1) Relating to the business of [TRG], regardless of whether the data or information constitutes a trade secret; 2) Disclosed to [M Key Financial Services], or of which [M Key Financial Services] became aware because of [its] relationship with [TRG]; 3) Not generally known to competitors of [TRG]; and 4) Trade secrets, methods of operation, names of clients, partners, financial information and projections, personnel data, and similar information."

22.

The confidentiality provision, which Ms. Key initialed on behalf of M Key Financial Services, further states:

"[M Key Financial Services] agrees to keep all such information confidential and not to discuss or divulge it to anyone other than appropriate [M Key Financial Services] representatives or employees. All confidential information, trade secrets, and other [TRG] records, files, financial statements, memoranda, reports, analysis, lists,

materials, proposals, plans, documents, computer programs, files, computer printouts and the like (together with all copies thereof) relating to the business of [TRG], which [M Key Financial Services] uses, prepares, or comes into contact with in the course of, or as a result of his consulting agreement with [TRG], are the sole property of the [TRG]. [M Key Financial Services] shall return all such materials and products to [TRG] immediately upon the termination of the Agreement."

23.

Per the Agreement, and in an effort to prevent TRG's confidential and trade secret business information from becoming general public knowledge, these restrictions were to remain in full force and effect even after the termination of the Agreement.

24.

The Agreement contains an indemnification provision, pursuant to which M Key Financial Services agreed "to indemnify and hold [TRG] harmless from all claims, losses, damages, attorney fees, costs, expenses and judgment that may be asserted against [TRG] as a consequence of any act, omission, negligence or default of [M Key Financial Services] in connection with or in performance of the Services."

**Ms. Key's Theft of TRG's Confidential Financial Information in March 2021**

25.

Unbeknownst to TRG, and without TRG's authority or consent, within months after she received the new Employee Handbook and while she remained a TRG employee, Ms. Key sent an email to a third party, Vikas ("Vic") Verma, on March 24, 2021, to which she attached an excel spreadsheet that included "details of all cash withdrawals and deposits made into TRG['s] bank accounts" from September 2020 until March 2021 (the "Cash Withdrawal & Deposit Report"). (*See* March 24, 2021, email, attached hereto as Exhibit

7

C.[1])  Although not a trade secret, the information attached to that email was undoubtedly confidential.

<div align="center">26.</div>

Ms. Key obtained the Cash Withdrawal & Deposit Report by using a computer or computer network to access TRG's Quickbooks account and take TRG's financial information, and she did so without authorization because she was not authorized to take TRG's confidential financial information for her own personal use or to share it with third parties.

<div align="center">27.</div>

Ms. Key obtained the Cash Withdrawal & Deposit Report by deceitful means or artful practice. She did not inform anyone at TRG that she was obtaining and taking that Report or that she was sharing it with a third party.

<div align="center">28.</div>

Ms. Key converted the information in the Cash Withdrawal & Deposit Report to her personal use in violation of her legal obligations to TRG to maintain the confidentiality of that information.

<div align="center">29.</div>

At the time Ms. Key sent the Cash Withdrawal & Deposit Report to Mr. Verma in March 2021, she knew that he was no longer a member, owner, manager, officer, agent, or employee of TRG. She also knew that he was not authorized to receive the information that she sent him and that it was confidential company information.

---

[1]    Due to the confidential nature of the information in the Cash Withdrawal & Deposit Report attached to this email, the attachment was not included with the filing of this Complaint on the Court's docket.

30.

Mr. Verma was formerly a business partner in and member and manager of TRG and exited the TRG business partnership in late 2020. Mr. Verma, TRG and its owners had disputes among them as of the March/April 2021 time frame that eventually resulted in litigation.

31.

On information and belief, Mr. Verma started one or more competing radiology businesses after exiting TRG, and he used the confidential information and trade secrets that he misappropriated from TRG via Ms. Key to gain an unfair competitive advantage, which harmed TRG's business.

32.

TRG did not learn about the 2021 email containing the Cash Withdrawal & Deposit Report obtained deceitfully and without authorization until it was produced in or about early 2025 as part of discovery in an arbitration proceeding between TRG and a business owned at least in part by Verma.

**Defendants' Misappropriation of TRG's Financial Statements**

33.

On October 6, 2023, more than two years following the termination of the Agreement, Ms. Key sent two more emails to Mr. Verma, both of which contained TRG's confidential financial information and trade secrets. (*See* October 6, 2023, emails, attached hereto as Exhibits D and E.[2])

---

[2] Due to the confidential and trade-secret nature of the information in the TRG Financial Statements attached to these emails, the attachments were not included with the filing of this Complaint on the Court's docket.

34.

One of the 2023 emails included a spreadsheet detailing TRG's yearly revenue from 2014 to 2019, and the other included TRG's year-end profit and loss statements from 2014 to 2021 (the "TRG Financial Statements").

35.

TRG takes steps to maintain the confidentiality of its financial information as described above, including allowing only a limited set of personnel to have access to the Company's Quickbooks account where its financial records are stored.

36.

By limiting access to its Quickbooks account and its financial information more generally, TRG takes steps that are reasonable under the circumstances to maintain the secrecy of that information.

37.

Ms. Key, acting through M Key Financial Services, obtained the TRG Financial Statements by using a computer or computer network to access TRG's Quickbooks account and take TRG's financial information without authorization.

38.

Defendants unlawfully retained the TRG Financial Statements and, on information and belief, other confidential and trade secret information of TRG, without authorization of TRG and in breach of their contractual and other legal duties to TRG.

39.

On information and belief, the March 2021 and March 2023 emails in which Defendants unlawfully and intentionally took TRG's confidential information and either shared that information with Mr. Verma or otherwise made use of it for her own personal purposes are not the only instances of such unlawful conduct.

40.

Upon information and belief, Mr. Verma used the financial information he obtained through Defendants' unlawful misappropriation of it, including the financial records attached to the emails she sent him in March 2021 and March 2023, to gain an unfair competitive advantage in the marketplace, compete unlawfully with TRG, and gain leverage and advantage due to an imbalance of information in his legal disputes with TRG.

41.

The unauthorized disclosure and use of the information misappropriated and improperly disclosed by Defendants in violation of the Agreement and other applicable laws have caused Plaintiff significant competitive harm and damages.

## COUNT I
## VIOLATION OF THE GEORGIA COMPUTER SYSTEMS PROTECTION ACT
### (Against Defendant Melrenee Key)

42.

Plaintiff incorporates and re-alleges the above allegations as if fully set forth herein.

43.

Ms. Key used a computer or computer network with knowledge that such use was without authority and with the intention of (a) taking or appropriating TRG's property, (b) obtaining TRG's property by any deceitful means or artful practice, and/or (c) converting

11

TRG's property to her use in violation of her obligations to keep TRG's financial information confidential, and is therefore guilty of computer theft under the GCSPA.

44.

Ms. Key's computer theft includes her conduct in obtaining and sharing the Cash Withdrawal & Deposit Report, as defined herein.

45.

On information and belief, Ms. Key committed other acts of computer theft beyond those set forth in this Complaint, to be identified through discovery.

46.

Ms. Key used a computer or computer network with the intention of examining TRG's financial data, and she did so with knowledge that such examination was without authority when she obtained and then shared the Cash Withdrawal & Deposit Report, and she is therefore guilty of the crime of computer invasion of privacy under the GCSPA.

47.

On information and belief, Ms. Key committed other acts of computer invasion of privacy beyond those set forth in this Complaint, to be identified through discovery.

48.

Ms. Key's acts of computer theft damaged TRG, with the monetary value of those damages to be determined at trial.

49.

Ms. Key's acts of computer invasion of privacy damaged TRG, with the monetary value of those damages to be determined at trial.

50.

Under the GCSPA, TRG is entitled to recover from Ms. Key its damages stemming from her computer theft and from her computer invasion of privacy, along with the costs of the suit.

51.

TRG did not discover Ms. Key's computer theft and computer invasion of privacy as alleged herein until in or about early 2025, when it obtained copies of the emails attached hereto as Exhibits during discovery in an arbitration proceeding to which it was a party.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (Against Defendant Melrenee Key)

52.

Plaintiff incorporates and re-alleges the above allegations as if fully set forth herein.

53.

Defendant Ms. Key was entrusted with significant financial responsibility and authority while employed by Plaintiff, and was provided access to Plaintiff's financial and other sensitive information.

54.

As an employee in a position of trust, confidence, and responsibility, Ms. Key owed Plaintiff fiduciary duties, including duties of loyalty, confidentiality, and good faith.

55.

Ms. Key breached these duties when, without Plaintiff's authority or consent, she disclosed Plaintiff's confidential financial information to a third party who was no longer affiliated with Plaintiff and with whom Plaintiff was involved in ongoing litigation.

56.

Plaintiff has suffered harm and incurred damages as a direct and proximate cause of Defendant's breach and is entitled to all remedies under applicable law including compensatory damages, lost profits, and the value of the property taken.

57.

Ms. Key's conduct in breaching her fiduciary duties to TRG was willful, malicious and fraudulent, thereby entitling Plaintiff to exemplary and/or punitive damages to be proven at trial.

<u>COUNT III</u>
**VIOLATIONS OF THE GEORGIA TRADE SECRETS ACT**
**(Against All Defendants)**

58.

Plaintiff incorporates and re-alleges the above allegations as if fully set forth herein.

59.

The financial information that Ms. Key and/or M Key Financial Services accessed, downloaded, and/or took from TRG as alleged herein, including but not limited to the TRG Financial Statements, constitute trade secrets pursuant to the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq*. ("GTSA").

60.

TRG derives economic value from its confidential financial information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

61.

TRG took reasonable precautions under the circumstances to protect its trade secrets, and all parties with access to its trade secrets, including Ms. Key in her role as an employee and later on behalf of M Key Financial Services, LLC, were subject to obligations to maintain their secrecy.

14

62.

Ms. Key was obligated to maintain the secrecy of TRG's confidential information and trade secrets pursuant to the confidentiality provisions of the TRG Employee Handbook with which she agreed to comply.

63.

M Key Financial Services was obligated to maintain the secrecy of TRG's confidential information and trade secrets pursuant to the non-disclosure provisions of the Consulting Agreement between TRG and M Key Financial Services.

64.

Defendants misappropriated Plaintiff's trade secrets when they took, used, and/or disclosed TRG's trade secret financial information without Plaintiff's express or implied consent.

65.

At the time of the disclosures, Defendants knew or should have known that they had obtained this information under circumstances that required them to maintain its confidentiality.

66.

Defendants engaged in this nefarious conduct despite having a duty to maintain the secrecy of Plaintiff's confidential and proprietary information and to limit its use, which duty they owed and continue to owe Plaintiff.

67.

As a direct and proximate result of Defendants' misappropriation, Plaintiff has suffered and continues to suffer damages. Defendants' actions have caused Plaintiff to lose competitive advantages in the marketplace and in litigation with Mr. Verma. Plaintiff is thus entitled to all

damages, attorneys' fees, costs and other remedies permitted under the GTSA, including injunctive relief to prevent further violations of the GTSA.

68.

Defendants willfully and maliciously misappropriated Plaintiff's trade secrets, thereby entitling Plaintiff to exemplary damages to be proven at trial.

## COUNT IV
## VIOLATIONS OF THE DEFEND TRADE SECRETS ACT
### (Against All Defendants)

69.

Plaintiff incorporates and re-alleges the above allegations as if fully set forth herein.

70.

The financial information that Ms. Key accessed, downloaded, and/or took from TRG as alleged herein, including but not limited to the TRG Financial Statements, constitute trade secrets pursuant to the DTSA.

71.

TRG's trade secrets relate to a service used in interstate commerce, *i.e.* the teleradiology services that it provides.

72.

TRG derives economic value from its confidential financial information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

73.

TRG has taken reasonable measures to keep its financial information secret.

16

74.

TRG derives economic value from its confidential financial information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

75.

Defendants acquired TRG's trade secrets by improper means and under circumstances that give rise to a duty to maintain its secrecy or limit its use.

76.

Defendants knew or had reason to know that the financial information they took from TRG and disclosed to third parties were trade secrets and that they had a duty to protect same.

77.

Defendants knew that the TRG Financial Statements were confidential and comprised trade secret information of TRG.

78.

Defendants misappropriated TRG's trade secrets by, among other things, taking them for their own use and disclosing them to third parties without TRG's knowledge, consent, or authorization.

79.

Defendants' misappropriation of TRG's trade secrets was willful and malicious.

80.

TRG is entitled to all available remedies under the DTSA due to Defendants' misappropriation of its trade secrets, including but not limited to actual damages, damages for

unjust enrichment, a reasonable royalty, injunctive relief to prevent further violations of the DTSA, and exemplary damages.

<u>COUNT V</u>
**BREACH OF CONTRACT**
**(Against Defendant M Key Financial Services, LLC)**

81.

Plaintiff incorporates and re-alleges the above allegations as if fully set forth herein.

82.

M Key Financial Services entered into the Consulting Service Agreement with Plaintiff on or about April 8, 2021. (*See* Exhibit A.)

83.

This Agreement included a confidentiality provision identifying as confidential "data and information: 1) Relating to the business of [TRG], regardless of whether the data or information constitutes a trade secret; 2) Disclosed to [M Key Financial Services], or of which [M Key Financial Services] became aware because of [its] relationship with [TRG]; 3) Not generally known to competitors of [TRG]; and 4) Trade secrets, methods of operation, names of clients, partners, financial information and projections, personnel data, and similar information." (*Id.*)

84.

As part of the Agreement, M Key Financial Services agreed "to keep all such information confidential and not to discuss or divulge it to anyone other than" a representative or employee of Defendant, and this provision was to "remain in full force and effect" even after the termination of the Agreement. (*Id.*)

85.

The Agreement is an enforceable contract between Plaintiff and M Key Financial Services.

86.

Defendant breached the Agreement by, among other things, improperly obtaining and retaining confidential, proprietary, and trade secret information as well as sending such information to a third party without Plaintiff's consent or authority.

87.

Mr. Verma was not a representative or employee of M Key Financial Services and was no longer affiliated with Plaintiff at the time of Defendant's disclosure of confidential financial information. To the contrary, Mr. Verma and TRG were actively involved in legal disputes with one another at the time

88.

Plaintiff performed its obligations under the Agreement.

89.

Plaintiff has suffered harm and incurred damages as a direct and proximate cause of Defendant's breach.

90.

Defendant M Key Financial Services is obligated under the Agreement to indemnify Plaintiff against "all claims, losses, damages, attorney fees, costs, expenses and judgments that may be asserted against [TRG] as a consequence of any omission, negligence, or default of [M Key Financial Services] in connection with or in performance of the Services."

91.

Plaintiff has experienced claims, losses, damages, attorney fees, costs and expenses as a consequence of the omissions, negligence, or default of M Key Financial Services as alleged herein. These include but are not limited to an adverse award in an arbitration proceeding that is

the subject of proceedings in this Court *Univabs Solutions Private Limited v. The Radiology Group LLC*, No. 1:25-CV-03932-VMC.

<div align="center">92.</div>

Plaintiff is entitled to all available remedies stemming from M Key Financial Services's breach of the Agreement, including but not limited to actual and compensatory damages, indemnification, and injunctive relief compelling compliance.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, TRG demands a TRIAL BY JURY and requests the following relief:

a) An award of actual and compensatory damages in an amount to be proven at trial;

b) An award of exemplary and punitive damages to be proven at trial;

c) A permanent injunction restraining Defendants from any further misappropriation, use or disclosure of TRG's confidential and trade secret information, requiring Defendants to return all confidential information and trade secrets to TRG, and restraining M Key Financial Services from any further violation of the Agreement;

d) Disgorgement of amounts paid to Ms. Key when she was in breach of her fiduciary duties;

e) Pre-judgment and post-judgment interest;

f) An award of reasonable attorneys' fees and costs incurred in this action; and

g) Such other relief as is just and proper.

Respectfully submitted this 7th day of August, 2025.

<div align="right" style="width:50%; margin-left:auto;">

/s/ Lisa D. Taylor
Lisa Durham Taylor
Georgia Bar No. 235529
lisa@stembridgetaylor.com
STEMBRIDGE TAYLOR LLC
3651 Mars Hill Road, Suite 2900B
Watkinsville, Georgia 30677

</div>

<div align="center">20</div>

Telephone: (678) 269-0402

*Attorney for Plaintiff*